U.S. District Court
District of Connecticut
FILED AT NEW HAVEN

November 10, 20 22

By  S. Santos
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>v.<br><br>CONTENTS OF BANK OF AMERICA ACCOUNT ENDING -4621, HELD IN THE NAME OF SHIREBERK INTERNATIONAL, INC.;<br>CONTENTS OF BETTERMENT LLC ACCOUNT ENDING -5115, BETTERMENT ID 1689539, HELD IN THE NAME OF JANAIYA SAMUELS; and CONTENTS OF TD AMERITRADE ACCOUNT ENDING -7275, HELD IN THE NAME OF JANAIYA SAMUELS,<br>    Defendants. | Case No.: 3:22-mc-00088 (MEG) |

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR CIVIL ASSET FORFEITURE SEIZURE WARRANTS**

I, Joshua Young, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a civil asset forfeiture seizure warrant as set forth more fully herein.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July 2014. I am presently assigned to the FBI's cybercrime squad in New Haven. During my experience in law enforcement, I have participated in investigations of diverse crimes, and in connection with these investigations, I have executed numerous search and arrest warrants. The investigations in which I have participated have resulted in successful criminal prosecutions in federal court. In addition to my work experience, I have received

1

specialized training in the field of computer crime investigations from the FBI and others. As an FBI agent, I am authorized to investigate violations of United States law.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. This affidavit seeks the seizure of the contents of Bank of America account ending -4621, held in the name of Shireberk International, Inc.; the contents of Betterment LLC account ending -5115, Betterment ID 1689539, held in the name of Janaiya Samuels; and the contents of TD Ameritrade account ending -7275, held in the name of Janaiya Samuels.

5. As set forth more fully herein, there is probable cause to believe, and I do believe, that the contents of Bank of America account ending -4621, the contents of Betterment LLC account ending -5115, Betterment ID 1689539, and the contents of TD Ameritrade account ending -7275 represents the proceeds of violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), that is, the money is derived from fraudulent tax return(s); and/or these accounts are property involved in money laundering in violation of 18 U.S.C. § 1956 (collectively the "TARGET OFFENSES").

6. Specifically, there is probable cause to believe that LYELL CHAMPAGNE JR. and/or JANAIYA SAMUELS committed the TARGET OFFENSES by submitting fraudulent tax returns for aged shelf companies via wire and/or the mail and later laundering the money through multiple accounts.

### THE PENDING CHARGES AGAINST LYELL CHAMPAGNE, JR.

7. I have been assisting with an investigation of KRISTIAN GUPTA and LYELL CHAMPAGNE, JR., that is being conducted by the FBI New Haven division. On or about August 4, 2022, GUPTA and CHAMPAGNE were indicted in the District of Connecticut on

charges relating to a scheme to commit bank fraud. *See U.S. v. Gutpa, et al.*, 3:22-cv-163 (SVN) (MEG). GUPTA and CHAMPAGNE were arrested and released on bond. The Court later revoked CHAMPAGNE's bond in part because of the scheme described herein. *Id*. at docket entries 44, 49, and 51 at pg. 3-4 ("The Government and Probation have presented evidence that while on supervision, Defendant, despite his knowledge that he was being monitored by Probation, brazenly executed the financial transfers and then lied to Probation when asked the activity, under the guise that the transactions were fraudulent, even though the surveillance and text messages to the recipient of the transfers demonstrate otherwise.").

8. Prior to that, on or about June 1, 2022, with the assistance of other law enforcement officers, I participated in the execution of a search warrant at CHAMPAGNE's residence in St. Louis, Missouri. Among the items seized were CHAMPAGNE's Apple iPhone 13 Pro, serial no. M75QP54LC6; a Samsung Galaxy S20 phone, serial no. R5CN203LMF; an Apple iPhone 7, serial no. BCG-E3087A; and a Razer Desktop computer, serial no. CM52200915011944. I also conducted an interview of CHAMPAGNE.

9. Following the execution of the search warrant, I conducted an initial review of the evidence that was seized, including information from CHAMPAGNE's two phones and computer. The devices contained communications and other information relating to a variety of schemes to defraud. At the time, it was not known whether CHAMPAGNE had successfully executed, or even attempted, any of those schemes (other than the scheme that was the subject of the investigation).

10. On or about June 27, 2022, CHAMPAGNE was interviewed again, this time in the presence of counsel, in New Haven, Connecticut. During the interview, CHAMPAGNE stated, in substance and in part:

    a. CHAMPAGNE had recently obtained employment at a Target store.

    b. CHAMPAGNE obtained a fraudulent PPP ("Paycheck Protection Program") loan of approximately $187,500 for a company, Techmatic Solutions Inc., using nine employee identities that "Russians provided" to him. CHAMPAGNE transferred a portion of the loan proceeds to Janaiya SAMUELS.

    c. CHAMPAGNE reported that he was involved in an online relationship with SAMUELS.

    d. On at least one occasion, SAMUELS purchased personally identifiable information (PII) and provided the information to CHAMPAGNE. According to CHAMPAGNE, SAMUELS "dabbled in this stuff."

    e. CHAMPAGNE did not make any reference to being the president of Shireberk International Inc., an entity described further below, nor any other business or activity that might give rise to an approximately $3.4 million tax refund.

### THE CHARGES CURRENTLY UNDER INVESTIGATION

11. On or about September 12, 2022, U.S. Probation Officer Marina Davila notified the Assistant U.S. Attorney handling the GUPTA and CHAMPAGNE prosecution that the pretrial services officer responsible for the supervision of CHAMPAGNE, who is Officer Katherine Stevens in the Eastern District of Missouri, had observed suspicious financial transactions while monitoring CHAMPAGNE's computer use. Shortly thereafter, Officer Davila then spoke to the FBI case agent handling the GUPTA and CHAMPAGNE prosecution. Officer Davila explained that the probation officer in Missouri had been reviewing screenshots produced by the monitoring software on CHAMPAGNE's computer, and the screenshots showed multiple $300,000 transactions to SAMUELS from Bank of America account ending -4621. Some days

later, Officer Davila advised the FBI case agent that, having reviewed the matter with her supervisor, there did not appear then to be a sufficient basis to charge CHAMPAGNE with violating the conditions of his pretrial release.

12. According to records provided by Bank of America, Bank of America account ending -4621 account was opened in the name of Shireberk International Inc. with "Lyell Champagne, Jr." listed as the company president on the signature card. On or about July 6, 2022, a U.S. Treasury check in the amount of $3,449,395.00, addressed to Shireberk International Inc. and "Lyell Champagne Jr." at an address in Cheyenne, Wyoming, was deposited into Bank of America account ending -4621. Prior to this deposit, the beginning balance on the statement for the period July 1, 2022, to July 31, 2022, was $410.00.

13. A search of the State of Wyoming business records shows that Shireberk International Inc. was registered in 2013, with the Registered Agent of this address being Corporate Agents, LLC, 1712 Pioneer Ave Ste 100, Cheyenne, WY. An open-source search of this address located the website "corporationstoday.com" that described the business as being located at the aforementioned address, and stated, "We offer fast, friendly, dependable service when it comes to buying aged shelf corporations, aged shelf companies, and incorporation filings. We have aged shelf LLC's, shelf companies, and aged shelf corporations in around 25 states." An open-source search also found a news article on reuters.com titled "Special Report – A little house of secrets on the Great Plains" and "SHELL GAMES: A Reuters Investigation" which among other things, contained a photograph of the building directory of 1712 Pioneer Ave. address that listed Corporations Today, and went on to detail the association of the owner of Corporations Today with various shell businesses and shelf corporations.

14. As a general matter, shelf companies and corporation entities that were created, *i.e.*, articles of incorporation were filed, annual reports submitted, and, on occasion, websites established. Outside of this, however, the entities have done nothing; they have no conducted business or even put content on the websites. These companies have no employees or physical locations. They are considered "aged" when these shelf corporations have been in existence for a period of time.

15. On October 5, 2022, the Honorable United State Magistrate Judge Maria E. Garcia, US District Court of the District of Connecticut, authorized the search of CHAMPAGNE's Apple iPhone 13 Pro, serial no. M75QP54LC6; a Samsung Galaxy S20 phone, serial no. R5CN203LMF; an Apple iPhone 7, serial no. BCG-E3087A; and a Razer Desktop computer, serial no. CM52200915011944, which were already in FBI evidence, for records related to the filing of false tax returns, money laundering, and conspiracy, involving LYELL CHAMPAGNE, JR., JANAIYA SAMUELS, and others known and unknown, giving rise to the deposit of a fraudulently-obtained U.S. Treasury check on or about July 6, 2022, as is further detailed in the warrant.

16. As it concerns this affidavit, CHAMPAGNE acquired an aged shelf corporation, file a fictitious tax return, and receive the proceeds.

17. CHAMPAGNE, and or others acting at his direction, filed these fictious tax returns electronically and via U.S. mail in violation of the TARGET OFFENSES.

18. As further described below, CHAMPAGNE and others engaged in a conspiracy which resulted in U.S. tax return forms being filled out with fictious information and numbers based on what they believed would be approved by the IRS, and not which was based off any real employees, goods, services, or operations.

19. A search of CHAMPAGNE's Samsung Galaxy S20 phone revealed a WhatsApp chat between CHAMPAGNE and an Unknown Person (UNKP), which included among other things, discussion of buying "aged shelf" and "aged empty" companies, as well as filing tax returns under multiple different business names. As set forth in the following paragraphs, the UNKP prepared taxes for Champagne.

20. On or about March 29, 2022, CHAMPAGNE sent UNKP a message which read in part "But I don't think the IRS would look at it very differently like you said C corps can get million dollar refunds no issues. And actually their limit is anything under 5million usd with no JTC review, anything over that is subject to JTC review just like non c corp regular over 2 million is subject".

21. On or about March 31, 2022, CHAMPAGNE sent UNKP a message which read in part "What do you estimate we can get with an aged C corp from Wyoming? I am getting a corporation that is 9 years old, and I know the JTC committee for IRS wont review anything under 5m for tax refund. Whatever your thoughts are brother" and then sent UNKP the message "I should have the corporation by tomorrow or Monday'. UNKP responded to this message "We'll get a good refund from the c corporation".

22. On or about April 1, 2022, CHAMPAGNE sent UNKP a message which read in part, "BUSINESS INFORMATION: NAME: SHIREBERK INTERNATIONAL, INC EIN:[Redacted] NAICS:531210 DATE OF REGISTRATION: SEPTEMBER, 2015 OWNER NAME:LYELL CHAMPAGNE JR SSN:[Redacted] BUSINESS ADDRESS:1712 PIONEER AVE STE 166, CHEYENNE, WY 82001" and then sent UNKP the message "C Corp" immediately thereafter.

23. In the prior paragraph, Champagne is communicating with UNKP to provide the details to UNKP of the shelf corporation to be used for the fictious tax returns.

24. On or about April 2, 2022, CHAMPAGNE sent UNKP a message which read in part, "What industry NAICS code do you think is good for this aged corp I have? I put real estate but maybe I should use consulting or something similar? What are your thoughts? Regards"

   a. CHAMPAGNE sent follow up messages to UNKP which read "The new company", "I just acquired today", "C Corp structure", "This will be for tax return refund purposes that is, whatever you think we can get a 7figure refund from", and "And since its in Wyoming, there wont be a need for a state tax return as there is no income tax or state tax that needs to be filed, only federal".

   b. UNKP responded to these messages with "Real estate is good, every activity is good. We just have to go for a lot of deductions and credits. Credits make the refund bigger".

25. A NIACS code, in the context of tax preparation, is a code signifying the type of general industry associated with the filing business. Shireberk International, Inc., mentioned in the prior paragraph, was not engaged in "real estate," or any other business.

26. On or about April 14, 2022, CHAMPAGNE sent UNKP a message that read in part, "And for 2019 and 2020 we can file after the deadline so that way you arent stressing as much? Or will that cause more delay for processing? I know getting 2018 filed is important and we will efile this weekend for 2021".

   a. UNKP responded by stating "Sorry for the little delay my friend. I'll deliver you the taxes for 2018, 2019, and 2020 in the next 15 hours".

    b. CHAMPAGNE responded by stating "You are fine my friend, I appreciate you working ever so hard and speedy on those brother. I am assuming you already found more credits to add up to 5m per year. Thank you, inshallah, we will make things happen this year" and then also said "And we can take our time efiling this weekend, but I can mail off the taxes tomorrow when delivered".

27.    On or about April 15 and 16, 2022, UNKP sent CHAMPAGNE prepared Form 1120 US Corporation Income Tax Returns for 2018, 2019, and 2020, in the name of SHIREBERK INTERNATIONAL, INC., 1712 PIONEER AVE STE 166, CHEYENNE, WY 82001, with the business activity being listed on all of the returns as "real estate". During the course of sending these returns to CHAMPANE, UNKP sent messages "3.9m is the refund for 2018", "2019 refund: 4,163,302", and "2020 refund: 3,695,708".

    a. On or about April 15, 2022, CHAMPANE responded by stating "I just read they will be mailing a paper check to the address on the return hmm"

    b. On or about April 16, 2022 CHAMPANE responded by stating "Wow thank you brother , I will print these off and go mail these asap. And we can work on 2021 later after you get some rest".

28.    Review of CHAMAPGNE's Apple iPhone 13 Pro revealed an extensive series of iMessages exchanged between CHAMPAGNE and SAMUELS, phone number 443-525-9551, under the contact name "Baby Bug".

29.    On or about March 31, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Hey baby Bug! Just about 30 mins ago I started the purchase on the new aged corp, so that we can get a refund. I spoke with the private boa rep and he will update me tomorrow, supposedly we can get that approved in a few days. This cow played games today, asked me

9

questions for her 'committee' and still didn't finish finalizing. Definitely not good business, once I get the feature enabled on the BoA, hopefully extremely soon as promised, I won't even entertain that bank. Wells Fargo says they are starting on their process now so I can't expect anything on their end until end of April beginning of March. I'm waiting for our accountant to come online soon, I should be getting the new aged corp by tomorrow or Monday at the latest. This one is 10 years old! Were you able to pay harmony earlier without any issues dear?"

30. On or about April 4, 2022, CHAMPAGNE sent SAMUELS a message which read in part "There's my sugar cake! Had you on my mind all Damn weekend and this morning! How's my baby Bug? I'm having account work on a big refund for this new aged corp I got for us on Friday, this one is 10 years old next year!"

31. On or about April 4, 2022, SAMUELS sent CHAMPAGNE a message which read in part "Did the taxes come from the normal aged? Not yet?"

32. On or about April 8, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Yes baby I'm glad I came thru for you at the right time. You'll be more than ok once our accountant is finished with these new biz tax returns. He's working diligently, going to try to get us just under 5m. I'm doing ok my love, just trying to get us our monies. So we can be living our best life and be back in Cali permanently."

    a. SAMUELS responded to this message, in part, "And the other taxes are still processing? Yes, live our best life in Cali!"

    b. CHAMPAGNE then responded by stating, in part, "Yes those are processing, the paper ones are for prior years. Those will take some months to see a refund, or not. I know the last time it took a while. However, we will have this new aged corp eFiled for 2021 for something super close to 5m in refund, the other years

will have millions as well but that will be on the back burner until the slow irs does their jobs. Then we also will have the grant to look forward to starting in June for another 5m."

33. On or about May 24, 2022, SAMUELS sent CHAMAPGNE a message which read in part "We don't have bank statements already? I thought we would given all of the work for the aged corp thus far. Ok that sounds good. Any more options for personal or biz loans? Biz loans that don't require connecting of bank account?"

34. CHAMPAGNE responded to this and other messages by stating, in part, "I haven't had to provide any statements for the aged corp since I have no activity on Bank of America. That's why I need to get some made. I only have 1 month that I have made but I want it to be more believable with real estate/property management transactions since that's the biz industry."

35. On or about May 25, 2022, CHAMPAGNE sent SAMUELS a message which read in part "Imma need you to refresh your eyes and use your fresh eyes for this right here i'm about to show you. Is my Bug with me or is she sleepy Bug?"

   a. SAMUELS responded by stating "I'm with you!!! Refreshing these eyes!!"

   b. CHAMPAGNE sent SAMUELS a photograph of a letter from the US Department of the Treasury, IRS, addressed to SHIREBERK INTERNATIONAL INC, SHIREBERK, 1712 Pioneer Ave Ste 166, CHEYENNE, WY, which read in part, "Message about your December 31, 2020 Form 1120", and "Your refund check will be sent by mail."

   c. CHAMAPGNE then sent follow-up messages which read, in part "For the big checks love, the new aged corp. so instead of giving DD for 2021 they'll send us a

11

       check. The letter just came on Monday and I forwarded to myself to receive it today. Fingers crossed".

d. SAMUELS responded, "Not the 74k?" and "I cannot follow anymore lol".

e. CHAMPAGNE responded "I sent an emergency tax advocacy fax request for the 74k today. That's the first aged corp. The new one is where we are expecting 16m+ in total refund checks. This letter about the 2021 refund is for 4.4m. Is my Bug found now or is she still sleepy and lost?"

f. SAMUELS then sent a message which read "Lmaoooo I'm with you baby. They lost 74k but not the 4.4M lol".

## INFORMATION REGARDING TRACING

36. The IRS sent CHAMPAGNE, via Shirebrook, a tax refund in the amount of $3,449,395.00. The check was dated May 24, 2022.

37. CHAMPAGNE deposited this check on July 6, 2022, into Bank of America account ending -4621, held in the name of Shireberk International, Inc. CHAMPAGNE was the original signatory to the account, but SAMUELS was later added to the account with a limited access.

38. According to records provided by Bank of America, starting on or about August 25, 2022, approximately six transactions of $300,000 each, totaling approximately $1,800,000, were transferred from Bank of America account ending -4621 to Betterment LLC account ending -5115, Betterment ID 1689539, held in the name of Janaiya Samuels. The transactions continued through August 31, 2022, which was the end of the period covered by the most recent statement provided by Bank of America.

39. Betterment LLC account ending -5115, Betterment ID 1689539, received the transfers from Bank of America account ending -4621, including an additional $300,000 transfer, for a total of $2,100,000 received. Prior to this deposit, the beginning balance on Betterment LLC account ending -5115, Betterment ID 1689539, for the period August 1, 2022, to August 31, 2022, was $505.52 in Cash Reserve, $0.00 in Education, $0.00 in General Investing, and $0.00 in Major Purchase.

40. On or about September 7, 2022, SAMUELS transferred approximately $1,896,000 from Betterment LLC account ending -5115, Betterment ID 1689539, to an account at PNC Bank Account ending -0829, held in the Janaiya Samuels.

41. According to records provided by PNC Bank, PNC Bank account ending -0829 received a $1,896,000 deposit from Betterment LLC account ending -5115, Betterment ID 1689539, on or about September 13, 2022. Prior to this deposit, the beginning balance on the statement for the period August 29, 2022 to September 19, 2022, was $0.00.

42. After the deposit, SAMUELS made several Banking Withdrawals, Debit Card Purchases, and other Deductions, totaling approximately $81,512.86.

43. On or about September 14, 2022, SAMUELS transferred $100,000.00 from the PNC Bank account ending -0829 to an account at TD Ameritrade account ending -7275, held in the name of Janaiya Samuels.

44. According to records provided by Charles Schwab / TD Ameritrade, TD Ameritrade account ending -7275, received a $100,000.00 deposit on or about September 14, 2022. Prior to this deposit, the beginning balance on the statement for the period September 1, 2022, to September 30, 2022, was a negative balance of approximately $4,482.42 in cash activity, a positive balance of approximately $21,422.02 in stocks, and a positive balance of

approximately $299.13 in mutual funds. After the deposit, SAMUELS made a series of Securities Purchases.

45. On or about September 22, 2022, I submitted a request to Bank of America concerning Bank of America account ending -4621 and to Betterment concerning Betterment LLC account ending -5115, Betterment ID 1689539, requesting that each account be frozen. On or about September 29, 2022, I submitted a request to PNC Bank concerning PNC Bank account ending -0829, requesting the account be frozen. On or about October 14, 2022, I submitted a request to Charles Schwab / TD Ameritrade concerning TD Ameritrade account ending -7275, requesting the account be frozen. In response to these requests, the above accounts were frozen.

46. On or about September 28, 2022, according to information provided by Betterment, CHAMPAGNE submitted a claim that certain transfers from Bank of America account ending -4621 had been fraudulent. Specifically, Betterment told law enforcement that the ACH transfers were returned under code R10, which according to NACHA, the administrator of the ACH Network, defines as "Customer Advises Originator is Not Known to Receiver and/or Originator is Not Authorized by Receiver to Debit Receiver's Account," and says this code is used when "Receiver does not know the identity of the Originator," "Receiver has no relationship with the Originator," or when "Receiver has not authorized the Originator to debit the account." Betterment provided a summary of the original ACH transfers it received from Bank of America account ending -4621 and later returned to the same:

   8/25/22: $300,000 deposited, returned on 9/28/22
   8/25/22: $300,000 deposited, returned on 9/28/22
   8/26/22: $300,000 deposited, returned on 9/28/22
   8/29/22: $300,000 deposited, returned on 9/28/22
   8/30/22: $300,000 deposited, returned on 9/28/22
   8/31/22: $300,000 deposited (not returned)
   9/01/22: $300,000 deposited, returned on 9/28/22

47. Pursuant to the ACH rules, Betterment "returned" the above money to Bank of America even though the money that had been deposited into Betterment had already been transferred to PNC. Because the money had already been transferred, when Betterment returned the money, it repaid Bank of America from its corporate account(s).

48. Betterment then, in turn, requested the money from PNC. At the time of the request from Betterment, however, the PNC account had been frozen at the request of law enforcement.

49. In conjunction with law enforcement, on November 3, 2022, PNC Bank account ending -0829 was unfrozen and PNC will honor Betterment's request, ultimately leaving PNC Bank account ending -0829 with a zero balance.

50. PNC Bank is in the process of honoring Betterment's request. I anticipate that once this request is honored, Betterment LLC account ending -5115, Betterment ID 1689539, will have a balance of approximately $70,000. This balance represents the remaining money after Betterment had recouped the money it paid to Bank of America following the Bank of America request. Once PNC Bank has completed the transfer and Betterment has the funds returned, law enforcement will serve the warrant, if it is approved by the Court.

51. According to records from Bank of America, as of October 3, 2022, the balance in Bank of America account ending -4621 was approximately $3,149,775.05.

52. According to records from Charles Schwab / TD Ameritrade, as of September 30, 2022, the balance in TD Ameritrade account ending -7275 was a negative balance of approximately $14.21 in cash activity, a positive balance of approximately $107,649.90 in stocks, and a positive balance of approximately $270.03 in mutual funds.

**CONCLUSION**

53.     Based on the foregoing information set forth above, I submit that probable cause exists to believe that the contents of Bank of America account ending -4621, held in the name of Shireberk International, Inc.; the contents of Betterment LLC account ending -5115, Betterment ID 1689539, held in the name of Janaiya Samuels; and the contents of TD Ameritrade account ending -7275, held in the name of Janaiya Samuels, were obtained knowingly by a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343 (wire fraud), or were obtained  knowing by a scheme or artifice to defraud; or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing in violation of 18 U.S.C. § 1341 (mail fraud); and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property

which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343 and/or mail fraud in violation of 18 U.S.C. § 1341, or conspiracy to commit such offenses.  Additionally, the contents of Betterment LLC account ending -5115, Betterment ID 1689539, held in the name of Janaiya Samuels and the contents of TD Ameritrade account ending -7275, held in the name of Janaiya Samuels are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering), as the contents of those accounts were part of financial transaction(s) that involved the proceeds of a "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343 and/or mail fraud in violation of 18 U.S.C. § 1341, or conspiracy to commit such offenses.

54.     I request that the Court issue a seizure warrant for the defendant accounts pursuant to 18 U.S.C. § 981(b).

Respectfully submitted,

JOSHUA YOUNG
*Digitally signed by JOSHUA YOUNG
Date: 2022.11.10 09:19:25 -05'00'*

Joshua Young
Special Agent
Federal Bureau of Investigation

The truth of the foregoing affidavit has been attested to me by Special Agent Joshua Young of the Federal Bureau of Investigation over the telephone on November 10, 2022, at New Haven, Connecticut.

Maria E. Garcia
*Digitally signed by Maria E. Garcia
Date: 2022.11.10 10:35:04 -05'00'*

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE